ELAINE M. SEID (Bar No. 72588)
McPHARLIN, SPRINKLES
    & THOMAS LLP
160 W. Santa Clara, Suite 400
San Jose, California 95113
Telephone (408) 293-1900
Facsimile (408) 293-1999
emseid@mstpartners.com

Attorneys Debtor
Elizabeth Campisi

# UNITED STATES BANKRUPTCY COURT

## FOR THE NORTHERN DISTRICT OF CALIFORNIA

### SAN JOSE DIVISION

In re:

ELIZABETH CAMPISI
    Debtor.

Case No.: 10-56816 ASW

Chapter 11

<u>Hearing</u>:
Date: 5/17/2011
Time: 2:15 p.m.
Judge: Hon. Arthur S. Weissbrodt

**<u>MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION TO SELL REAL PROPERTIES FREE AND CLEAR OF LIEN OF ERNEST AVILA
(2780 Southside Road, Hollister, California)</u>**

Debtor Elizabeth Campisi ("Debtor" or "Campisi") has moved for authorization and approval of her sale of real property located at and commonly known as 2780 Southside Rd., Hollister, California ("Southside Property") to John Brigantino Retirement Plan & Trust and Vice Brigantino Retirement Plan and Trust or assigns ("Buyer") for the purchase price of $485,000, substantially on the terms and conditions of the Residential Purchase Agreement and Joint Escrow Instructions ("Purchase Agreement"), a copy of which is as attached hereto as Exhibit A.

Pursuant to 11 U.S.C. §363(f) Debtor Elizabeth Campisi ("Debtor" or "Campisi") has additionally moved the Court to approve her sale of real property, free and clear of

the lien of Ernest Avila ("Avila") with Avila's lien to attach to the proceeds of sale in the same manner and to the extent of his allowed claim. The sale of the Properties free and clear of Avila's lien is proper under 11 U.S.C. §363(f)(3) and (4) as (i) the purchase price is greater than the aggregate value of all liens on the Southside Property, including Avila's lien and (ii) the amount of Avila's lien is in bona fide dispute.

## FACTUAL BACKGROUND

1. During the summer of 2008 Debtor responded to a Pacific Coast Mortgage advertisement to inquire about a loan. Debtor spoke to Michael Wilson ("Wilson"), the owner of the company, by telephone but never met him in person. Over a period of weeks, Wilson arranged a loan to Debtor of $300,000 at an interest rate of 10% to be secured by the Southside Property and Debtor's property known as 125 4thStreet, Hollister, California ("4th Street Property.")

2. Wilson advised Debtor her loan was approved and instructed her to go to First American Title in Hollister on or about August 8, 2008, to sign the loan documents. In connection with the loan, Debtor was provided with a loan disclosure, a copy of which is attached as Exhibit A to the Declaration of Elizabeth Campisi filed on April 15, 2011 as Document [140-3] (the "4/15 Campisi Declaration.")[1] Wilson did not intend to be present at First American Title and was not present.

3. Debtor went to the First American Title office in Hollister and asked an acquaintance, Elaine Guttirez to go with her. Before Debtor had finished signing the documents the meeting was interrupted by a telephone call from Sandy Avila ("Sandy"), who identified herself as Avila's daughter in law. The title officer answered the telephone and handed the telephone to Debtor.

---

[1] Exhibit A to the 4/15 Campisi Declaration is filed as Document [140-4]

MEMORANDUM OF POINTS & AUTHORITIES IN SUPPORT OF MOTION TO SELL PROPERTIES
FREE AND CLEAR OF LIENS (2780 Southside Road, Hollister, California)

-2-

4. Sandy told Debtor that Avila would not fund the loan unless Debtor gave Avila additional collateral for the loan and paid $3,000 per month on the loan instead of the $2,500 negotiated by Wilson. Debtor was upset as she had worked on the loan terms for several weeks, was counting on the loan funds to bring her debts current, and the loan terms were being changed at the last minute. Debtor felt she had no alternative but to agree to Sandy's demands.

5. Debtor requested Guttirez speak with Sandy as Debtor was too upset to continue her conversation with Sandy.

6. Debtor and Guittirez waited at the First American Title office while the title officer drafted new and different loan documents. Debtor signed the revised note and deed of trust, copies of which are attached as Exhibit B to the 4/15 Campisi Declaration.[2]

7. The interest rate on the new note was increased from 10% per annum to 12% per annum in order to provide Avila with $3,000 per month as demanded by Sandy. This change in the interest rate is a material term was made without the assistance or participation of Wilson, the broker who initially arranged the loan. Debtor is informed and believes and on that basis states that Sandy is not a licensed real estate broker.

8. The new note was secured by three properties, the Southside Property, the 4th Street Property and Debtor's property located at and commonly known as 402 Sally Street, Hollister, California (the "Sally Street Property.")

9. During 2010, Debtor defaulted on the Avila loan and Avila commenced foreclosure on all three properties.

---

[2] Exhibit B to the 4/15 Campisi Declaration is filed as Document [140-5]

MEMORANDUM OF POINTS & AUTHORITIES IN SUPPORT OF MOTION TO SELL PROPERTIES FREE AND CLEAR OF LIENS (2780 Southside Road, Hollister, California

-3-

Case: 10-56816    Doc# 154-1    Filed: 04/28/11    Entered: 04/28/11 15:25:00    Page 3 of 8

10. Debtor filed her Chapter 11 petition on June 30, 2010 ("Petition Date.") Debtor has obtained the Bankruptcy Court's authorization, over Avila's objections, to use the cash collateral rents from the three properties securing Avila's loan to pay the contractual monthly interest payments to Avila on his note ("Avila Note") as adequate protection payments. Since the Petition Date Debtor has Avila paid $3,000 per month commencing in September 2010 through April 2011.

11. On April 26, 2011, the Court approved Debtor's sale of the Sally Street Property and the Fourth Street Property free and clear of Avila's lien/deed of trust with all net proceeds of sale to be paid to Avila at the close and directly from escrow.[3] Debtor's objections to Avila's claim have been reserved, notwithstanding Debtor's payment to Avila.

12. On or about March 24, 2011, Avila provided Campisi with a Payoff Demand in the total amount of $334,332.23, a copy of which is attached hereto as Exhibit B.

13. On April 27, 2011 First American Title, the escrow company for the sale of the 4th Street and Sally Street properties prepared an Estimate Statement, a copy of which is attached hereto as Exhibit C.

14. The anticipated net proceeds to be paid to Avila are anticipated to be in the range of $232,946.17, leaving an approximate unpaid balance of $101,000[4] on the Avila's Payoff Demand.

---

[3] The Bankruptcy Court Order Approving Sale of Real Property Free and Clear of Lien of Ernest Avila and Authorizing Payment Directly From Escrow of the Costs of Sale, Taxes and Payment of Net Proceeds to Ernest Avila is entered in the Court's Docket as Document [150].

[4] Campisi is aware Avila will likely claim additional attorney's fees and expense incurred in connection with her sale motions. Campisi reserve all objections she may have to the amount of Avila's claim.

MEMORANDUM OF POINTS & AUTHORITIES IN SUPPORT OF MOTION TO SELL PROPERTIES FREE AND CLEAR OF LIENS (2780 Southside Road, Hollister, California)
-4-

Case: 10-56816   Doc# 154-1   Filed: 04/28/11   Entered: 04/28/11 15:25:00   Page 4 of 8

15. Other than Avila's deed of trust the only other lien on the Southside Property is a tax lien to secure unpaid real property taxes. As of April 28, 2011, the unpaid taxes are approximately $30,000 as reflected on report from the Tax Collector of San Benito Count, a copy of which is attached hereto as Exhibit D.

16. After deductions for Broker's commissions of 3% of the purchase price in the amount of $14,550, real property taxes of $30,000 and an arbitrary 1% cost of sale ($4,850), net proceeds of approximately $435,600 remain, calculated as follows:

```
485,000.00   Sale Price
 14,550.00   3% Commission
 30,000.00   Property Taxes
  4,850.00   COS
435,600.00   Net Proceeds
```

17. The net proceeds exceed the balance owed on the Avila Note after he receives the net proceeds from the sale of the Sally Street and 4th Street properties, even without regard to Debtor's objections to the amount of Avila's claim.

18. As more fully set forth herein and on the facts stated in the 4/15 Campisi Declaration, the 12% interest rate charged on Avila's note is usurious. Thus Avila is not entitled to any interest on his note and Debtor is entitled to a substantial credit against the principal of Avila's note for the interest payments she has paid Avila since September 2008.

19. Pending resolution of the proper allowed amount of Avila's secured claim, the net proceeds from the Southside Property that would otherwise be paid to Avila from the sale should be held in a blocked, interest bearing trust account pending resolution of the proper amount of Avila's claim. This will assure both Avila and Debtor the funds will

be available for distribution to the proper person when the disputed amount of Avila's secured claim is resolved.

20. Debtor has no objection to the funds being held by Avila's attorneys in a blocked interest bearing attorneys trust account pending resolution of the dispute, provided Avila's attorneys provide the U.S. Trustee, Avila and Debtor, each with copies of the monthly bank account statement to ensure the funds remain in the blocked account.

## Legal Arguments

**A. The Debtor May Sell Estate Property Free and Clear of Any Interests Under Certain Circumstances That Exist In This Case.**

Section 363(f) of the Bankruptcy Code provides "The trustee [debtor] may sell property of the estate under subsection (b) or (c) of this section free and clear of any interest in such property of any entity other than the estate, only if—

    (1) Applicable nonbankruptcy law permits sale of such property free and clear of such interest;
    (2) Such entity consents;
    (3) Such interest is a lien and the price at which such property is to be sold is greater than the aggregate value of all liens on such property;
    (4) Such interest is in bona fide dispute; **or**
    (5) Such entity could be compelled, in a legal or equitable proceeding, to accept a money satisfaction of such interest.

11 U.S.C. §363(f). Two separate grounds exist to authorize the Court to approve a sale free and clear of Avila's lien.

**B. The Sales Price Exceed the Aggregate Value of All Liens Against the Southside Property.**

As discussed above, the tax lien for real property taxes is the only lien on the Southside Property other than Avila's deed of trust and the unpaid real property taxes

are approximately $30,000. After deduction for broker's commissions, costs of sale and the real property taxes, sale proceeds in excess of $435,000 remain. This exceeds Avila's Payoff Demand even without regard to the net proceeds payment he is to receive from the sale of the other two properties and without regard to Debtor's disputes regarding the amount of Avila's claim.

Thus the Court has authority to approve of the sale of the Southside Property free and clear of Avila's lien under 11 U.S.C.§363(f)(3).

### C. A Bona Fide Disputes Exists As to the Amount of Avila' Claim.

The Avila loan was initially arranged by Wilson and his company Pacific Coast Mortgage. The terms of the loan negotiated by Wilson are reflected in the loan disclosures and documents attached as Exhibit A to the 4/15 Campisi Declaration. The loan negotiated by Wilson is not subject to California usury laws as Debtor is informed and believes Wilson was a licensed broker at the time and loans arranged by licensed brokers are exempt from usury.[5]

However, after Debtor arrived at the title company to sign the loan documents prepared at Wilson's directions, Sandy Avila intervened to renegotiate the terms on Avila's behalf. She demanded additional collateral and, importantly, she demanded monthly payments of $3,000 per month rather than the $2,500 negotiated by Wilson.[6] The difference in monthly interest only payments increased the interest rate from 10% to 12%. The 12% interest rate exceeds the lawful interest that can be imposed under usury laws unless an exemption applies.[7] Debtor is informed and believes that Sandy

---

[5] California Constitution Art. 15 §1 (2).

[6] Compare the Promissory Notes attached as Exhibits A & B. Exhibit A Note is at 10%. Exhibit B Note is at 12%.

[7] The maximum legal rate of interest in California for non-consumer loans is the greater of 10% or 5% plus the Federal Reserve Bank of San Francisco discount rate (FRBSF discount

MEMORANDUM OF POINTS & AUTHORITIES IN SUPPORT OF MOTION TO SELL PROPERTIES
FREE AND CLEAR OF LIENS (2780 Southside Road, Hollister, California)

-7-

1    Avila is not a licensed broker and therefore the materially altered loan is no longer

2    protected by the broker's exemption for usury. Therefore, the 12% interest is usurious

3    as a matter of law. The result is Avila is entitled to no interest on his loan.

4    As Debtor has paid significant "interest only" payments since September 2008

5    these payments must be applied entirely to the loan principal, resulting in a substantially

6    lower amount due on the Avila Loan. Accordingly, the legally recoverable unpaid

7    balance of the Avila Loan amount is in bona fide dispute and is a separate and

8    independent ground under Section 363(f)(4) for the Court to authorize the pending sale

9    of the Properties free and clear of the Avila lien.

10    WHEREFORE, Debtor respectfully requests the Court approve and authorize

11    Debtor's sale of the Southside Properties to Buyer, free of Avila's lien, with all net

12    proceeds otherwise payable to Avila being paid to his attorneys to be held in a blocked,

13    interest bearing attorney's trust account, with monthly account statements provided to

14    the U.S. Trustee, Avila and Campisi, pending further order of the court upon the

15    resolution of the proper amount of Avila's disputed secured claim, and for such other

16    and further relief as the Court deems just and proper.

17    Dated: April 28, 2011                McPharlin Sprinkles & Thomas, LLP

18

19                                        By: /s/ Elaine M. Seid

                                               ELAINE M. SEID

20                                              Attorneys for Debtor

---

24    rate) on the 25th day preceding the earlier date the loan was contracted or executed. California Constitution Art. 15 §1 (2). The Court is requested to take judicial notice that the FRBSF

25    discount rate during 2008 was less than 4%. Consequently the maximum legal rate of interest for the Avila Loan is 10%.

MEMORANDUM OF POINTS & AUTHORITIES IN SUPPORT OF MOTION TO SELL PROPERTIES FREE AND CLEAR OF LIENS (2780 Southside Road, Hollister, California)

-8-