Michael S. Sosnowski   (State Bar #062859)
150 Carmelito Avenue, Suite 200
P.O. Box 2167
Monterey, California 93942-2167
Telephone:  (831) 657-1240
Fax:  (831) 657-1244

Attorney for
Rabobank, N. A.

UNITED STATES BANKRUPTCY COURT

NORTHERN DISTRICT OF CALIFORNIA

In re:

   ELIZABETH CAMPISI,

                     Debtor

Case No. 10-56816 ASW

Chapter 11

Date:        February 26, 2015
Time:       3:00 p. m.
Courtroom: 3020
Place:      280 South First Street
              San Jose, CA

**RABOBANK'S AUTHORITIES IN OPPOSITION
TO ORDER TO SHOW CAUSE RE CONTEMPT**

Rabobank submits the following authorities in opposition to the Debtor's specious motion for a finding that it is in violation of the automatic stay of 11 USC §362.  As will become evident Debtor's motion, predicated on the argument that the bank has a duty under §362 to affirm something that does not in fact exist, must be denied.

**I
SUMMARY OF OPPOSITION**

Debtor's motion for a contempt finding based on an alleged violation of the automatic stay

**RABOBANK'S AUTHORITIES IN OPPOSITION TO MOTION RE CONTEMPT**

1

must be denied on the following grounds:

1. The bank's judgment lien against Bertuccio does not appear in the Debtor's or her estate's chain of title to the Well Lot.
2. The bank's judgment lien against Bertuccio does not name the Debtor nor describe property of the Debtor's estate and as such does not violate 11 USC §362.
3. The bank does not have a duty under 11 USC §362 to assist the Debtor or her estate in procuring title insurance by affirmatively acknowledging that it is not asserting a lien against property of her estate where that lien does not appear in the Debtor's or her estate's chain of title.

## II
## RABOBANK'S JUDGMENT LIEN DID NOT ATTACH TO THE DEBTOR'S PROPERTY

Contrary to Debtor's assertion the bank's judgment lien against Tina Bertuccio did not attach to the Debtor's or her estate's title to the Well Lot. Despite bank's counsel having pointed out the error in Debtor's analysis, Debtor erroneously and, one might conclude, maliciously persists in conflating what appears in First American Title Company's Preliminary Report with what as a matter of law appears in the chain of title.

The bank recorded its abstract of judgment pursuant to Code of Civil Procedure §697.340 (Interests in Real Property subject to attachment) which provides in relevant part:

(a) A judgment lien on real property attaches to all interests in real property in the county where the lien is created (whether present or future, vested or contingent, legal or equitable) that are subject to enforcement of the money judgment against the debtor pursuant to Article 1 … of Chapter 1 at the time the lien was created.…

"As this section [CCP 697.340] makes clear, an abstract of judgment recorded against real property attaches only to the extent of the judgment debtor's interest in the property." (*Palm v Klapperman* (*In re Cady*) 266 B. R. 172 (B.A.P. 2001) affirmed *In re Cady* (9th Cir) 315 F3d 1121) Because the bank's judgment debtor, Bertuccio had conveyed in fee simple all of her

interest in the Well Lot to the Debtor before the bank obtained and recorded its judgment lien it could not attach to the Well Lot since Bertuccio no longer held any interest in it.

That post conveyance liens against a seller do not attach to a subsequent *bona fide* purchaser's title to real property formerly owned by the seller is the most elementary of legal principles without which the real estate market would not exist. This long standing principle is so vital to a functioning market that a judgment lien will not attach to property conveyed by the judgment debtor prior to the recordation of the judgment lien even where the grantee failed to record the conveyance (i.e. title was still in the grantor/judgment debtor's name when the judgment lien was recorded) (*Grigsby v Shwarz* (1889) 82 Cal. 278).

That this basic legal and common sense principle was not known to Debtor's counsel or escaped even cursory legal research after bank's counsel pointed it out is mystifying unless an ulterior motive is at work. If Debtor's counsel understood this basic legal proposition but, because First American's preliminary title report reflected the bank's judgment lien as an exception needed to confirm that the lien against Bertuccio did not appear in Debtor's chain of title, counsel could, as bank's counsel did, obtain at nominal cost from a title company a lot book guarantee reflecting any encumbrances and liens against Debtor's title to the Well Lot. As reflected in First American Title Company's Lot Book Guarantee dated February 12, 2015 the bank's judgment lien against Bertuccio does **not** appear in Debtor's chain of title to the Well Lot. (See p. 5 of exhibit "A" to the Sosnowski declaration filed in opposition to the contempt motion)

As pointed out to Debtor's counsel on numerous occasions Debtor has a title insurance problem not a chain of title problem. On December 10, 2014 Debtor's counsel responding to the bank's counsel's email recognized, consistent with the principles outlined above, that the bank's judgment lien is not in the Debtor's chain of title by stating:

"The only issue is whether or not Rabobank asserts a lien on the 'Well Lot.' We believe the answer is no as the judgment lien is against Mrs. Bertuccio only and Mrs. Bertuccio had no interest in the Well Lot as of the date Rabobank recorded its judgment lien….**If Rabobank does not assert a lien, Rabobank should have no reason not to acknowledge that fact that we can provide to the title company**." (Exhibit D-2 to Seid declaration, emphasis added)

On December 11, 2014 bank's counsel sent Debtor's counsel an email stating:

**RABOBANK'S AUTHORITIES IN OPPOSITION TO MOTION RE CONTEMPT**

3

As noted in my December 3, 2014 email to you the title company appears to have been concerned about the underlying circumstances surrounding the conveyance since it lists both Mr. Romero's and my client's Abstracts as exceptions to the title they would insure **even though both were recorded after the conveyance occurred.** Because your dispute really concerns the state of title to the Well lot that the title company will insure, what explanation have you received from it concerning why they are excepting Mr. Romero's and my client's judgment liens from the title they will insure. (Exhibit D-3 to Seid declaration; emphasis not in original)

On December 11, 2014 Debtor's counsel responded as follows:

I have discussed this matter fully with First American Title explaining why the Rabobank judgment lien against Bertuccio should not be reflected as a lien on Campisi's property. We are told the **only reason** the title company has refused to issue title insurance is because Bertuccio and Campisi did not purchase title insurance when Bertuccio transferred the Well Lot to Campisi. First American is willing to insure title once we deliver in recordable form a release by Rabobank or a Court order clearing the lien from title to the property. (Exhibit D-5 Seid declaration; emphasis in original)

Again on December 12, 2014 Debtor's counsel's email states:

…your client is now aware that its judgment lien against Bertuccio is clouding Ms Campisi's title to the well lot because she is unable to get title insurance. **Your client's refusal to concede your client is not asserting a lien** against Ms Campisi or her well lot is effectively a willful violation of the automatic stay. (Exhibit D-4 Seid declaration; emphasis added)

This email exchange brings us to the essence of Debtor's contention that the bank violated the automatic stay by declining to concede that it was not asserting a judgment lien that does not in fact exist in Debtor's chain of title. By asking the bank to sign a document that it was not asserting a judgment lien against the Well Lot the Debtor is asking the bank to affirmatively agree that it will not in the future do something that could affect Debtor's title and cause the judgment lien to attach.

The bank has not created a "cloud" on Debtor's title because its judgment lien is not in the chain of Debtor's title. Instead, as discussed below First American Title made a business decision that it would not insure Debtor's title based on any risk it perceived the bank's judgment lien may have on Debtor's title. The risk of course is not the judgment lien as it presently affects Debtor's title, but rather, that the bank may elect to file an action to set the conveyance from Bertuccio to the Debtor aside on the grounds of a fraudulent transfer which, if successful, would cause the

**RABOBANK'S AUTHORITIES IN OPPOSITION TO MOTION RE CONTEMPT**

4

judgment lien to attach to Bertuccio's re-vested title to the Well Lot. (Code of Civil Procedure section 697.340 (b))

The dilemma for Debtor is nothing in section 362 requires the bank to agree not to assert a lien and thereby release any fraudulent transfer claims that it may have as they relate to the Well Lot. Section 362 only prevents the bank from commencing a fraudulent transfer action related to the Well Lot without first obtaining relief to proceed. Cognizant of this dilemma Debtor attempts to use section 362's damages cudgel to coerce the bank in assisting Debtor in procuring title insurance by having the bank agree it will not do something that would cause its judgment lien to attach to the property in the future. While signing a release that acknowledges the judgment lien will not attach to the Well Lot accomplishes the Debtor's goal, section 362 does not require the bank's cooperation in achieving it.

## III
## A PRELIMINARY TITLE REPORT IS NOT AN ABSTRACT OF TITLE

A preliminary title report is not an abstract of title but merely an offer to issue a title policy. (Insurance Code §12340.11; *Southland Title Corp. v Superior Court* (1991) 231 C. A.3d 530, 537) "The issuer of a preliminary title report merely intends to induce the prospective insured to purchase a policy of title insurance and to declare in advance of such purchase precisely the risk which it will agree to assume. (231 C.A.3d 538) Title companies prepare preliminary reports to limit their risks and not on behalf of any party to a real estate transaction. (*Siegel v Fidelity Nat. Title Ins. Co.* (1996) 46 C. A.4th 1181, 1193) While a preliminary title report reflects matters that appear in the chain of title it can include off record matters if the title company believes they might impair the title it is willing to insure.

Such apparently is the case here where First American Title decided to include not only the bank's off record judgment lien against Bertuccio but also creditor, Romero's judgment lien against Bertuccio (exception 9) in its preliminary title report even though both liens are not in Debtor's chain of title because they were recorded after title had been transferred from Bertuccio to the Debtor. Perhaps, given the proximity in time of the June 21, 2010 conveyance to the August 16,

2010 recordation of the $103,395 Romero judgment lien against Bertuccio First American Title was concerned that the conveyance to Debtor could be set aside as a fraudulent transfer. If a future fraudulent transfer action succeeded and title was again vested in Bertuccio, the bank's and Romero's judgment liens would attach to Bertuccio's title. (CCP §697.340; *Hertweck v Fearon* (1919) 180 Cal. 71, 73)

However, in the context of this contempt proceeding the reason matters not since First American Title's decision to list the bank's and Romero's judgment liens as exceptions to the title it would insure does not change the fact that the judgment liens are not in the Debtor's or her estate's chain of title to the Well Lot. Since they are not in the Debtor's chain of title they do not create a legal cloud (as distinguished from how their off record existence may influence a title company's business judgment) on the title and therefore do not violate the stay. And as discussed below the bank's declination to agree that it would not take action that might in the future cause its judgment lien to attach to the Well Lot's chain of title does not violate the stay nor has Debtor cited any authority that its declination does.

## IV
## DECLINING TO AFFIRM THE NONEXISTENCE OF A LIEN AGAINST PROPERTY OF THE ESTATE DOES NOT VIOLATE THE AUTOMATIC STAY

Because the bank's judgment lien has not attached to the Debtor's or her estate's property, the bank's declination to release what does not exist does not violate the stay. Put another way, one cannot unwind that which has not occurred. 11 USC §362 provides among other things that it "operates as a stay, applicable to all entities, of the commencement or continuation … of a judicial, administrative, or other action or proceeding against the debtor…; the enforcement …of a judgment…; any act to obtain possession of property of the estate …; [and] any act to create perfect, or enforce any lien …" It is apparent that the bank's judgment lien against a non-debtor party that does not describe and has not attached to the Debtor's or her estate's property does not fall within section 362's constellation of prohibited acts.

Faced with this conundrum the Debtor seeks to compel the bank to execute a document that releases a nonexistent lien and insists that the bank's declination to do so violates the automatic stay.

RABOBANK'S AUTHORITIES IN OPPOSITION TO MOTION RE CONTEMPT

6

The Debtor has cited no authority for her proposition and none exists. The extant motion is nothing more than bullying tactic (that likely violates Rule 9011) designed to coerce the bank into providing the title company in effect a "comfort letter" that it will not in the future commence a fraudulent transfer action in connection with Bertuccio's conveyance to the Debtor which, if successful, would cause its judgment lien to attach to Bertuccio's title. A fraudulent transfer action can be commenced within 4-years after the creditor's judgment became final and the time to file an action has not expired on the bank's judgment. (Civil Code §3439.09; *Cortez v Vogt* 52 CA4th 917, 929).

Since First American Title is being asked to insure that title is vested in the Debtor it has a legitimate business interest in being concerned that Debtor's title might be divested or that it would have to satisfy the bank's judgment to avoid divestiture. However, the bank has no obligation under section 362 to assuage the title company's business concerns. Section 362 only enjoins post-petition action against debtors and the bank has done nothing against the Debtor here that contravenes section 362.

Dated January 13, 2015

                                        */s/ Michael Sosnowski*
                                        Michael Sosnowski,
                                       attorney for Rabobank, N. A.